UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SETH FEIN,<br><br>*Plaintiff*,<br><br>v.<br><br>LAURA FEIN ZOTTOLA; ARTHUR T. ZOTTOLA; ARTHUR FEIN ZOTTOLA; ALBERT FEIN ZOTTOLA<br><br>*Defendants*. | No. 25-CV-6889 (KMK)<br><br>OPINION & ORDER |

Appearances:

Neil Venderwoude, Esq.
VanderWoude & Roma
Stormville, NY
*Counsel for Plaintiff*

Matthew Mannis, Esq.
Piscionere & Nemarow, P.C.
Rye, NY
*Counsel for Defendants*

Michael James Konicoff, Esq.
Pisciotti & Malsch, P.C.
Florham Park, NJ
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Seth Fein ("Plaintiff") brings this Action against Laura Fein Zottola ("Ms. Zottola"), Arthur T. Zottola ("Mr. Zottola"), Arthur Fein Zottola ("Arthur"), and Albert Fein Zottola ("Albert") (together, "Defendants"), alleging conversion, fraud, breach of fiduciary duty, identity theft, and unjust enrichment. (*See generally* Compl. (Dkt. No. 1).) Before the Court is Defendants' Motion To Dismiss the Complaint. (*See* Defs.' Not. of Mot. To Dismiss (Dkt. No.

28); Defs.' Mem. of Law. in Supp. of Mot. To Dismiss (Dkt. No. 28-2).) For the reasons set forth below, Defendants' motion is granted.

I. Background

A. Factual Background

The following facts from Plaintiff's Complaint and are assumed to be true for purposes of resolving the instant Motion.

Plaintiff and Defendant Ms. Zottola are the children of Albert and Sandra Fein. (Compl. 1.) Albert died in 1989 and Sandra died in 2023. (*Id.* 2.) Both Albert and Sandra held retirement accounts through Teachers Insurance Annuity Associates and College Retirement Equity Fund ("TIAA-CREF"), which is an ERISA-governed fund. (*Id.* ¶¶ 8, 29–30.) When Sandra passed, she left funds and trusts holding retirement and investment accounts and an estate checking account holding over $550,000. (*Id.* ¶ 7.)

Ms. Zottola began actively managing her mother's affairs in 2008. (*Id.* ¶ 23.) In November of 2009, TIAA-CREF reported a beneficiary change in which the equal split between Ms. Zottola and Plaintiff was changed to an 80/20% division in favor of the sister, and then later to a five-way division between Plaintiff, Ms. Zottola, Mr. Zottola, and the Zottolas' two sons Albert and Arthur. (*Id.* ¶ 67.) Plaintiff learned of this change following his mother's death. (*Id.*) He asserts that Ms. Zottola was Sandra's Power of Attorney but also "changed and managed the account at times pretending that she was Sand[ra Fein]." (*Id.* ¶ 87.) TIAA-CREF's notes also "indicate [Mr. Zottola] was interacting with TIAA-CREF as an expert on Sand[ra Fein's] behalf." (*Id.* ¶ 88.) The fund references conversations with Sandra Fein during time periods when she was incapacitated and could not have conducted those conversations with sufficient

understanding, such as a call in May 2023 where she purportedly called TIAA-CREF to change her phone number. (*Id.* ¶¶ 89–90.)

Ms. Zottola and her children also tried to claim 75% of the estate assets under a 2010 will, which changed the 50% equal division between Plaintiff and Ms. Zottola from a previous 1997 will. (*Id.* ¶¶ 68–69.) Plaintiff asserts that these changes to the division of Sandra Fein's assets runs afoul of his mother's "keen sense of fairness." (*Id.* ¶ 76.) By altering both the division of the estate and beneficiary designations in the retirement accounts, Plaintiff asserts that Defendants engaged in conversion, fraud, breach of fiduciary duty, identity theft, and unjust enrichment. (*Id.* ¶¶ 95–111.)

### B. Procedural Background

Plaintiff filed his initial Complaint on August 20, 2025. (*See* Compl. (Dkt. No. 1).) Defendants filed their Motion To Dismiss the Complaint on December 5, 2025. (*See* Not. of Mot. To Dismiss the Complaint (Dkt. No. 28); Mem. of Law. in Supp. of Mot. To Dismiss ("Defs.' Mem.") (Dkt. No. 28-2).) On January 6, 2026, Plaintiff filed his Opposition to Defendants' Motion To Dismiss (*See* Pl.'s Opp'n to Mot. To Dismiss ("Pl.'s Opp'n") (Dkt. No. 29).) On January 22, 2026, Defendants replied. (*See* Defs.' Reply in Support of Mot. To Dismiss the Complaint ("Defs.' Reply") (Dkt. No 30).)

## II. Discussion

### A. Standard of Review

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." *Biener v. Credit Control Servs., Inc.*, No. 21-CV-2809, 2023 WL 2504733, at *3 (S.D.N.Y. Mar. 14, 2023) (alteration in original) (quoting *Lyndonville Sav. Bank & Tr. Co. v.*

*Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)); *see also Wells Fargo Bank v. 5615 N. LLC*, No. 20-CV-2048, 2022 WL 15523689, at *3 (S.D.N.Y. Oct. 27, 2022) (citing *Lyndonville*, 211 F.3d at 700–01). "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (citation omitted)).

B. Analysis

Plaintiff brings claims of conversion, fraud, breach of fiduciary duty, identity theft, and unjust enrichment. (Compl. ¶¶ 95–111.) Defendants seek dismissal of Plaintiff's claims under Rule 12(b)(1) for lack of subject matter jurisdiction, as the state law claims do not present a question of federal law. (Defs.' Mem. 5–9.) Plaintiff asserts that this case arises under federal law, notwithstanding the fact that all of his claims are state common law causes of action, because two of the retirement accounts at issue are ERISA-governed accounts. (Pl.'s Opp'n 6.)

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This is commonly known as "federal question jurisdiction." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016). In determining whether a case presents a "federal question," courts are guided by the "well-pleaded complaint rule," which provides that

"federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The Supreme Court has concluded that the ERISA civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Mundell v. Natsios-Mundell*, 753 F. Supp. 3d 318, 324–25 (S.D.N.Y. 2024) (internal quotations omitted). This doctrine is also referred to as "complete preemption," and it is a "jurisdictional concept" which allows for "a plaintiff's state cause of action [to be] recast as a federal claim for relief, making its removal by the defendant proper on the basis of federal question jurisdiction." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014) (internal quotations omitted) (alterations adopted). Plaintiff attempts to invoke this doctrine by asserting that the claims arise under ERISA. (Compl. ¶ 10.)

To determine which state common law claims are subject to complete preemption under ERISA, and thus can be converted into federal question claim, the Court must look to ERISA § 502(a)(1)(B), which provides: "A civil action may be brought — (1) by a participant or beneficiary — . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[1] In *Aetna Health, Inc. v. Davila*, the Supreme Court established a two-part test to determine of a common law claim is preempted and thus converted to a federal question claim under this provision: "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent

[1] When the Court references Section 502 of ERISA, it will cite to its codification at chapter 29 of the United States Code.

legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." 542 U.S. 200, 210 (2004). The Second Circuit has clarified that under the first prong of *Davila*—*i.e.*, whether an individual "could have brought his claim under ERISA § 502(a)(1)(B)"—courts should consider: (1) "whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B)," and (2) "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 328 (2d Cir. 2011). The *Davila* test "is conjunctive"; therefore, "a state-law cause of action is preempted only if both prongs of the test are satisfied." *Id.*

The analysis of whether a claim is preempted by ERISA starts with the "presumption that Congress does not intend to supplant state law." *Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 59 (2d Cir. 2010) (internal quotation marks omitted). "Courts are reluctant to find that Congress intended to preempt state laws that do not affect the relationships among . . . the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries, and the plan itself." *Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003). On the other hand, "state laws that would tend to control or supersede central ERISA functions—such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits—have typically been found to be preempted." *Id.*

Section 502(a)(1)(B) provides that a civil action may be brought "by a participant or beneficiary . . . to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Court first considers whether Plaintiff could have brought some portion of her claims under ERISA § 502(a)(1)(B). *See Davila*, 542 U.S. at 210.

In making this determination, the Court must first consider whether Plaintiff is "the *type* of party that can bring a claim" under § 502(a)(1)(B), and then "whether the *actual claim*[*s*]" asserted in this Action constitute "colorable claim[s]" for benefits under § 502(a)(1)(B). *Montefiore*, 642 F.3d at 328 (emphasis in original).

At issue here are the TIAA-CREF and Vanguard retirement accounts, which Plaintiff alleges are governed by ERISA.[2] Plaintiff asserts that Ms. Zottola "caused changes to [these plans'] beneficiary designations from a longstanding 50/50 allocation between Seth and Laura to an 80/20 split favoring herself." (Pl.'s Opp'n 1–2.) Defendants do not appear to dispute that Plaintiff is a beneficiary who could bring a claim under § 502(a)(1)(B). (*See* Defs.' Mem. 7 (analyzing only the second step of Davila Prong Two).) The Court agrees that as a beneficiary of the TIAA-CREF plan, Plaintiff could bring a claim under § 502(a)(1)(B). *See, e.g.*, *Handlowitch v. Verizon Commc'ns, Inc.*, No. 18-CV-617, 2019 WL 1789708, at *3 (S.D.N.Y. Apr. 24, 2019) ("Plaintiff—as a 'participant or beneficiary' of an employee benefit plan—is the type of party that can bring a claim pursuant to § 502(a)(1)(B)."); *Saini v. Cigna Life Ins. Co. of New York*, No. 17-CV-1922, 2018 WL 1959551, at *6 (S.D.N.Y. Apr. 24, 2018) (same).

The second inquiry under prong one of the *Davila* test is whether any part of Plaintiff's claims "can be construed as . . . colorable claim[s] for benefits pursuant to § 502(a)(1)(B)." *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 299 (2d Cir. 2012). "[T]o be colorable under § 502(a)(1)(B) . . . the actual claims asserted must be claims for benefits." *Neuroaxis*

[2] The Complaint makes cursory references to a retirement account with Vanguard, (*see* Compl. ¶¶ 9, 108), but lays out no facts alleging misconduct with respect to that account. Therefore, the Court's analysis focuses on the allegations pertaining to the TIAA-CREF plan.

*Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y., Inc.*, No. 11-CV-8517, 2012 WL 4840807, at *3 (S.D.N.Y. Oct. 4, 2012).

Defendants assert that "the Complaint does not challenge the plan administrator's benefit determination but rather the Defendants' alleged conduct, unrelated to the plan's terms." (Defs.' Mem. 7.) The Court agrees. Like in *Mundell*, Plaintiff's suit seeks to "hold [a fellow beneficiary] liable rather than challenge the plan administrators' distributions of benefits." *Mundell*, 753 F. Supp. 3d at 327. The allegations relating to the ERISA plan are that "beginning in 2009, [Defendant Ms. Zottola] began altering the beneficiaries of [the] TIAA-CREF [account." (Compl. 2.) The Complaint insinuates that Defendant Ms. Zottola "changed and managed [the TIAA-CREF] account at times pretending that she was [the account holder]" and that Defendant Arthur Zottola "was interacting with TIAA-CREF as an expert on [the account holder's] behalf." (Compl. ¶¶ 87–88.) While the Court in no way intends to undermine the seriousness of identity theft, such conduct does not imply the propriety of the *plan administrator's* benefit determinations. *See Mundell*, 753 F. Supp. 3d at 326 ("[P]laintiffs' technical eligibility for benefits under Dr. Mundell's ERISA plan is a matter separate from defendant's alleged impropriety in securing sole claim to the benefits at issue.").

Moreover, Defendants are not in the category of parties who can be sued under this provision. The Second Circuit has limited the category of defendants who may be sued under Section 502(a)(1)(B) to "a claims administrator that exercises total control over the plan claims process," *N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 133 (2d Cir. 2015), which can include "the plan and the administrators and trustees of the plan in their capacity as such," *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989). *See also Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013) ("By necessary implication,

however, a cause of action for 'benefits due' must be brought against the party having the obligation to pay. In other words, the *obligor* is the proper defendant on an ERISA claim to recover plan benefits."). The Complaint alleges that Ms. Zottola "interacted with TIAA-CREF as [Sandra Fein's] POA" and "changed and managed the account pretending to be [Sandra Fein]," but nowhere does it assert that she had total control over the plan claims process or was the plan's claim administrator or trustee. (Compl. ¶ 87.) Plaintiff's Opposition describes Ms. Zottola as an "ERISA fiduciary," but the Complaint does not contain allegations indicating that she was an obligor under the plan. (Pl.'s Opp'n 5.) Thus, Plaintiff's claims do not survive prong one of the *Davila* test.

Nor do Plaintiff's claims survive under prong two, which examines "if there is no other independent legal duty that is implicated by [the] defendant's actions." *Montefiore*, 642 F.3d at 332. To identify whether another legal duty is "independent," courts assess whether the defendant's obligations are "inextricably intertwined with the interpretation of Plan coverage and benefits." *See id.* at 332; *see also McCulloch v. Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 150 (2d Cir. 2017) (holding "any legal duty [the defendant] has to reimburse [the plaintiff] is independent and distinct from its obligations under the [plaintiff's] plan" where duty arose "not from an alleged violation of some right contained in the plan, but rather from a freestanding state-law duty"); *Arditi*, 676 F.3d at 299 (finding the plaintiff's claims were "inextricably intertwined" with plan where they sought to seek "enforcement of specific provisions of the [p]lan"). This test may be satisfied where the plan does "not serve merely as a benchmark for determining the value of [the plaintiff's] damages" but "is the basis for the claimed benefits." *Chang v. Pfizer, Inc.*, No. 15-CV-8994, 2017 WL 975975, at *6 (S.D.N.Y. Mar. 10, 2017). Additionally, the Second Circuit also has drawn a distinction between claims

involving the "right to payment" and claims involving the "amount of payment." *See Montefiore*, 642 F.3d at 331. "The former are said to constitute claims for benefits that can be brought pursuant to § 502(a)(1)(B), while the latter are typically construed as independent contractual obligations." *Id.*

Defendants argue that their "obligations not to take another's property as their own or not to obtain that property through fraud, conversion, or unjust enrichment, are independent and distinct from any obligation imposed by the [relevant ERISA plans]." (Defs.' Mem. 9.) Essentially, the Complaint alleges Ms. Zottola impersonated her mother when interacting with TIAA-CREF plan so that the beneficiary designations would be changed in favor of Ms. Zottola and her family. (Compl. ¶¶ 67, 87.) Whether Ms. Zottola engaged in deception when interacting with TIAA-CREF is not "inextricably intertwined with the interpretation of Plan coverage and benefits," rather, it has nothing to do with the terms of the Plan's coverage. *See Montefiore*, 642 F.3d at 332. Moreover, this case does not concern the "right to payment" but instead "the amount of payment" because the issue is not whether Plaintiff was a beneficiary under the ERISA-covered plan at all, but whether Defendants wrongfully changed the beneficiary designations, which implicates "independent contractual obligations," *id.*, from the administration of the plan itself, (Compl. ¶ 67). Plaintiff's claims implicate independent legal duties separate and apart from the ERISA-covered plans. Accordingly, they fail to satisfy prong two of the *Davila* test. *See Mundell*, 753 F. Supp. 3d at 328 ("[E]ven assuming defendant has some legal duty under the plan, her obligation not to take another's property as her own, or not to obtain that property through fraud, is 'independent and distinct' from any obligation imposed by the plan.").

Because Plaintiff's state common law claims are not completely preempted by ERISA, they do not arise under federal law. This Court therefore lacks subject matter jurisdiction over this case and must dismiss it pursuant to Rule 12(b)(1).

III. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is granted. Plaintiff's claims are dismissed with prejudice. The Clerk of the Court is respectfully directed to terminate the pending Motions at Dkt. Nos. 28 and 29 and close this case.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge